JODI LINKER
Federal Public Defender
Northern District of California
JOYCE LEAVITT
Assistant Federal Public Defender
1301 Clay Street, Ste. 1350N
Oakland, CA 94612
Telephone: (510) 637-3500
Cellular telephone: (415) 517- 4879
Email: joyce_leavitt@fd.org

Counsel for Defendant CONTRERAS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ERIK ANTONIO CONTRERAS,<br>Defendant | **Case No.:** CR 25-00185-JST<br>**SENTENCING MEMORANDUM**<br>**Court:** Courtroom 6, 2nd Floor<br>**Hearing Date:** August 28, 2026<br>**Hearing Time:** 9:30 a.m. |

## I. INTRODUCTION

Erik Contreras will be sentenced on August 28, 2026, after having pled guilty to one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). Now that he has the benefit of more than two years of sobriety and ongoing mental health and drug treatment, Mr. Contreras has reflected upon the harm which his actions have caused with horror and regret, and he is truly sorry. His conduct was the culmination of years of physical and mental abuse (starting at the hands of his father and uncles), exposure to pornography as a child and other factors which culminated in the commission of this offense. Mr. Contreras recognizes the harm which his actions caused, as well as the potential harm that could have occurred. He is not asking for a sentence of probation despite the fact that Mr. Contreras has no prior convictions, recognizes the wrongfulness of his actions and has been determined to be a low risk of reoffending. Confidential Report of Psychological Evaluation of Jeremy Coles dated March 31, 2026 (Coles Report) at p. 17. Instead, Mr. Contreras asks the Court to impose a sentence of 42 months imprisonment, followed by a period of five years supervised release.

There are many mitigating factors which warrant a variance below the agreed-upon advisory guideline range of 78–97 months. These include the sentencing factors described in 18 U.S.C. § 3553(a), such as the history and characteristics of Mr. Contreras, post-offense rehabilitation, collateral consequences of this conviction and need to avoid unwarranted disparities. The parties' plea agreement also includes agreed-upon guideline calculations based upon the offense of conviction and a corresponding agreed upon factual basis to which Mr. Contreras admitted as part of the guilty plea. Plea Agreement at ¶¶ 2, 6. The probation office proposes a higher guidelines offense level than that agreed to by the parties by including an enhancement of two levels for distribution under USSG § 2G2.2(b)(3)(F). *See* Presentence Investigation Report disclosed July 6, 2026 (PSR) at ¶¶ 3, 51. Irrespective of what the Court determines the advisory guideline range to be in this case, it should still vary downward and impose 42 months custody as requested by Mr. Contreras.

Mr. Contreras files this sentencing memorandum in support of his request. Attached in support of his sentencing memorandum is (1) letter from Erik Contreras (Exhibit A); (2) letter from Mayra Cruz (Exhibit B); and (3) letter from Mr. Contreras' brother identified as EC (Exhibit C); (4) letter

from Jaime Barbieri (Exhibit D); (6) letter from Victoria Stohecker (Exhibit E); (7) letter from John Salcido (Exhibit F); (8) letter from Brian Blitzstein (Exhibit G): and (9) letter from Danielle Russell (Exhibit H). Filed concurrently under seal is the Confidential Report of Psychological Evaluation of Jeremy Coles dated March 31, 2026 ("Coles Report").

## II. LEGAL FRAMEWORK

The Court should sentence Mr. Contreras to 42 months in prison. The Court is aware of the directives of *United States v. Booker*, 543 U.S. 220 (2005), and the sentencing factors listed in 18 U.S.C. § 3553(a). The Court must consider, among other factors, the advisory sentencing range, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(1), (a)(4) and (a)(6). The factors detailed in § 3553(a) assist the Court in fulfilling the mandate to make "an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." *United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985). "The overarching statutory charge for a district court is to 'impose a sentence sufficient, but not greater than necessary," to serve the statutory purposes of sentencing. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (quoting § 3553(a)).

In other words, every day of custody must be necessary. For Mr. Contreras who had never been convicted of a crime until his arrest in this case, never undergone drug, alcohol, mental health or sex offender treatment until now and has spent almost three years working to understand and address his behavior and the issues which have cause it, a sentence greater than 42 months is too much time.

### A. History and Characteristics of Mr. Contreras

#### 1. Abusive Upbringing

Under 18 U.S.C. § 3553(a), Mr. Contreras's history and characteristics are a factor to be considered. Mr. Contreras was born in San Francisco to parents, both of whom fled from war-torn countries[1] and carried their own scars which informed their parenting of Mr. Contreras. PSR ¶¶ 71, 72. Mr. Contreras lived with his parents and five uncles in a one-bedroom apartment for the first

[1] His father was a refugee from El Salvador and his mother was a refugee from Nicaragua who migrated to the United States after two brothers will killed in the civil war there with five brothers. Coles Report at p. 4

several years of his life. Coles Report at p.4. Mr. Contreras' father used violence as discipline. PSR at ¶ 72. He was an alcoholic whose physical abuse of his son became worse when he drank. *Id*.; Coles Report at p. 4 ("My dad was always drinking so I didn't want to be home. It was an unpredictable environment.") Mr. Contreras's father punched him and hit him with belts and other objects. Coles Report at p. 4-5. In addition, Mr. Contreras' father ridiculed him for being "too soft," PSR at ¶ 72. He was emotionally abused by his uncles as well. When Mr. Contreras developed a speech impediment which consisted of a severe stutter, his father and uncles made fun of him which made the stutter even worse. *Id*. Mr. Contreras was also regularly bullied at school for the stutter *Id*. at ¶ 73. Mr. Contreras became depressed and anxious due to the turbulent environment.[2] Coles Report at p. 5.

**2. Dependance on Alcohol from an Early Age**

In the cultures that his parents came from, psychological problems were generally denied. *Id.* Instead, drugs and alcohol was used to self-medicate and for entertainment. In addition to his father, Mr. Contreras' uncles also used drugs and alcohol. *Id*. Soon Mr. Contreras began drinking at age 10, Coles Report at p.6; PSR at ¶ 86, and by high school Mr. Contreras was drinking 4 to 5 drinks daily as he graduated from social drinking to drinking to mask his emotions and sadness. PSR at ¶ 86. Mr. Contreras believes that alcohol played a large role in his criminal conduct as it skewed his morals and viewpoints. *Id*. Whenever he viewed child pornography or communicated with the undercover agent who was posing as a father of a 12-year-old, Mr. Contreras was under the influence of alcohol. *Id*.

This is consistent with the literature regarding substance abuse and sex offenses which provides that hypersexual and hyposexual behaviors are common concomitant of substance use disorders.[3] [4] The disorders show similarities as traumatic experiences become special attention as potential risk

---

[2] Studies have shown that children who experienced abuse and neglect are at increased risk for developmental, health, and mental health outcomes, including learning problems (e.g., problems with inattention and deficits in executive functions), peer rejection, internalizing symptoms (e.g., depression, anxiety), and posttraumatic stress disorder (PTSD). As adults, these children continue to show increased risk for psychiatric disorders, substance use, serious medical illnesses, and lower economic productivity https://www.ncbi.nlm.nih.gov/books/NBK195987/

[3] *See e.g*. Jepsen, D., Luck, T., Bernard, M., Moor, I., & Watzke, S. (2023). Study protocol: Hypersexual and hyposexual behavior among adults diagnosed with alcohol- and substance use disorders-Associations between traumatic experiences and problematic sexual behavior. *Frontiers in psychiatry*, *14*, 1088747 at https://pmc.ncbi.nlm.nih.gov/articles/PMC10061101/

[4] https://pmc.ncbi.nlm.nih.gov/articles/PMC12611143/#abstract1

factors for the development of addictions, hypersexual, and hyposexual behavior.

**3. Exposure to Pornography as a Young Child**

Mr. Contreras was also greatly affected by his exposure to adult pornography by his uncles when he was just nine years old, which made him aware of sex at that early age. Coles Report at p. 7. By the time he was 12 years old, Mr. Contreras was seeking out adult pornography on the internet. *Id*. Exposure to pornography as a child causes additional trauma and developmental problems:

> pornography exposure at . . . young ages . . . results in anxiety for the child . . . [c]hildren also report feelings of disgust, shock, embarrassment anger, fear, and sadness after viewing pornography. These children can suffer . . . symptoms of anxiety and depression. They may become obsessed with acting out . . . children exposed to pornographic material are at risk for a broad range of maladaptive behaviors and psychopathology.

American College of Pediatricians. (2024). The impact of pornography on children – American College of Pediatricians. https://acpeds.org/the-impact-of-pornography-on-children/ https://acpeds.org/the-impact-of-pornography-on-children/

**4. Psychological Evaluation of Mr. Contreras by Sex Offender Expert**

Dr. Coles evaluated Mr. Contreras approximately two years after his October 27, 2023 arrest. Dr. Coles' expertise to conduct risk assessments in individuals convicted of sexual offenses include his work as a sexually violent predator evaluator for the State of California for 23 years, doing fully psychological assessments on over 60 individuals with the same charges Mr. Contreras faces in this case, as well as evaluating over 1800 sex offenders assessing for diagnostic questions, recidivism risks and other issues. Coles Report at p.1. Dr. Coles noted that Mr. Contreras did not express cognitive distortions commonly associated with Pedophilic Disorder, recognized that at the time of the offense his addiction to pornography was spiraling as he was experiencing isolation and anxiety, and expressed that his attraction to child pornography was based on the rush he was seeking from extreme types of pornography to combat his feeling numb to living in general.[5] Coles Report at 8-10;

[5] Prolonged exposure to pornography is known to lead to habituation, resulting in blunted processing of pleasurable stimuli and greater sensitivity to negative stimuli . . . continuous use of pornography impairs emotional processing capacity and flattens affect, reducing emotional connection to real-life sexual experiences. The reward and gratification system adapts by releasing large amounts of dopamine, but tolerance develops, requiring increasingly higher doses, quantities, and intensity to achieve arousal. This raises the dopamine—or pleasure—threshold so high that real-life experiences

PSR at ¶ 83. According to Dr. Coles "as is the case with other addictions, pornography addiction can easily escalate much as a substances abuser's use may escalate from alcohol to methamphetamine." *Id*. at p. 16. Dr. Coles opines that:

> Mr. Contreras presents as a psychologically intact, treatment-engaged individual whose offender behavior appears to have occurred in the context of significant emotion distress, social isolation, and maladaptive coping . . . continued participation in outpatient treatment, adherence to prescribed medication, maintenance of sobriety, and compliance with . . . supervision . . . would . . . further reduce the likelihood of future sexual misconduct.

Coles Report[6] at p. 17.

### B. Nature and Circumstances of the Offense

Mr. Contreras agrees that the offense conduct in this case is serious. The conduct is described in the plea agreement in paragraph 2. *See* plea agreement at ¶ 2. He agrees that on October 27, 2023, he possessed image files and video files of minors engaged in sexually explicit conduct. *Id*. Mr. Contreras also agreed that he communicated with an undercover agent who he believed to be the father of a 12-year-old girl and expressed a desire to meet the 12-year-old girl for sexual gratification for approximately a month between September 11, 2023 until October 26, 2023. *Id*. Despite Mr. Contreras talking to the undercover agent about his fictitious daughter for more than a month, no plans or attempts to meet were ever made which is significant.

Importantly, the conversation with the undercover agent appears to be the only such conversation of its kind found on Mr. Contreras's electronic devices. In his letter to the Court, Mr.

---

fail to provide the necessary pleasure. A study of university students found that low levels of cognitive and affective empathy were associated with heavy consumption of pornography and higher prevalence of risk behaviors.(Ballester, 202021). https://pmc.ncbi.nlm.nih.gov/articles/PMC12515835/#B19

[6] Because Dr. Coles evaluates sexually violent predators, mentally disordered offenders and individuals about whom the State of California is concerned with releasing, he has a far greater ability to distinguish between the truly dangerous and others who are treatable and pose a lesser concern for recidivism. The reports that the Court sees from Dr. Coles regarding federal defendants are presented in cases where Dr. Coles has done an objective evaluation and determined that a particular individual poses a low risk. His evaluation regarding the dangerousness of a client or explanation behind what led to the offense conduct deserves far more weight than that of a lay person such as a probation officer, who does not possess the same expertise or understanding behind why these offenses occur.

Contreras says this:

> After re-reading the conversation I've had with the undercover officer, I can't even begin to comprehend my mindset in those times in my new found sobriety. I truly am ashamed at the thoughts I had and the way I tried to portray myself to this person as if it was something that was "okay." It is absolutely NOT okay.

Exhibit A. Based upon the nature and circumstances of the offense, a sentence of 42 months' custody is sufficient to meet the goals of sentencing. Any more time would be greater than necessary.

**C. Post-Offense Rehabilitation**

This Court can consider "post-crime maturation and self-rehabilitation" at sentencing. *See United State v. Ruff*, 535 F.3d 999, 1003 (9th Cir. 2008). The Supreme Court has "made clear that post-sentence or post-offense rehabilitation – particularly in light of its tendency to reveal a defendant's likelihood of future criminal conduct – [is] a critical factor to consider in the imposition of a sentence." *United States v. Trujillo*, 713 F.3d 1003, 1010 (9th Cir. 2013)(citing *Pepper v. United States*, 562 U.S. 476, 491-93 (2001) and *Gall*, 552 U.S. at 59 (emphasis added). Such rehabilitation is "the most up-to-date picture" of a defendant's history and characteristics, which in turn sheds light on whether a defendant will be deterred from committing another crime. *Pepper*, 562 U.S. at 492 (quoting 18 U.S.C. § 3553(a)(1)).

In this case, the many letters written on behalf of Mr. Contreras describe his post-offense rehabilitation and significant changes he has made over the past three years. *See, e.g*. Exhibit C ("I have seen meaningful changes in Erik . . . noticed a positive shift in his attitude his mindset, and the way he approaches life. . .through therapy, sobriety, and other positive outlets. I have seen him begin to rebuild himself and make healthier decisions. I have seen my brother become more proactive, more focused, and more intentional."); Exhibit D ("I have seen drastic, inspiring changes in him.") Exhibit E ("Over the past year – and especially in the last six months – . . . he made the decision to become sober . . . it is a priority in his life . . . the change in him has been clear and consistent . . . he is not the same person he was a year ago."); Exhibit G ("I am . . . aware of Erik's extensive involvement in the Alcoholics Anonymous (AA) community."); Exhibit H ("I met Erik in 2026 whien he came into the rooms of AA. . . From my experience, it is rare to see someone come into AA and take it as serious as he has. He has gotten involved, taken service positions . . . is determined to never let his mental

health or drinking lead him down a path he doesn't want to go down again . . . when it comes to mental health and he is doing as much as he can."); Exhibit B ("Erik cut ties with friends and a relationship that did not serve his well-being and he attends individual therapy twice a week, participates in weekly group counseling, and actively attends Alcoholics Anonymous meetings every week."). Mr. Contreras also has discussed the changes he has made towards his rehabilitation. Exhibit A ("This is . . . the beginning of a long road of learning, rectifying my wrongs, and making amends . . . working my addiction . . . attending daily meetings . . . meeting with my sponsor . . . I . . . will continue to take steps to make sure you will never see me in this situation again.").

Furthermore, the letters also describe Mr. Contreras's empathy, generosity to others and work ethic. The letters demonstrate that Mr. Contreras has focused his energy not only on rehabilitating himself, but also assisting others in the community around him. *See e.g.* Exhibit B ("His dedication to his recovery has earned the trust of his peers, and he was recently nominated to serve as the secretary for his AA group. In that role he spends several hours each week preparing agendas and helping organize meetings in service of others . . . last week he was at the hospital making sure our grandmother had received her meal and helping to coordinate her care."); Exhibit F ("As the . . . volunteer lead at Half Moon Bay State Beach, I've had the pleasure of working with Erik . . . at several habitat restoration workdays . . . Erik gives 100% at our workdays, performing the more demanding tasks such as shoveling and moving mulch, clearing invasive plants, and dumping large weed piles. His personable outgoing nature . . . creates a friendly, inviting environment we strive for at all of our workdays."); Exhibit G ("I have observed Erik's commitment to building positive community spaces. He founded a dog-friendly hiking group . . . I have found him to be dependable, considerate, and genuinely invested in the well-being of those around him."); Exhibit H ("Since I've known him, he has shown nothing but kindness, empathy, and a strong desire to heal and grow. . . he is truly a good man.").

What the many letters on Mr. Contreras's behalf make clear is that the individual who will stands before the Court on August 28, 2026, for sentencing is very different from the individual who was arrested on October 27, 2023 for the offense in this case. Mr. Contreras continues to reckon with his past and develop additional tools to ensure that he remains on track. Mr. Contreras's post-offense

rehabilitation is such that the Court need not impose a custodial sentence which is overly draconian. A sentence of 42 months custody is sufficient to meet the goals of sentencing, including a sentence that acknowledges extraordinary post-offense rehabilitation.

**D. The collateral consequences for these offenses are severe**

Mr. Contreras will suffer significant collateral consequences irrespective of what sentence the Court imposes after he is released from custody which will affect him for the rest of his life. For example, Mr. Contreras will now be required to register as a sex offender and will be labeled as such and monitored for life. There will be restrictions on where Mr. Contreras can live and what he can do. He will be unable to go certain places that might put him into unsupervised contact with minors and may be unable to live within certain distances from parks and schools. In this case, the collateral consequences of Mr. Contreras's guilty plea include the following:

- public humiliation for his offense with family members and others
- ***lifetime registration as a sex offender*** for all the public to see
- employment, housing, and other opportunities will be restricted by his registration status
- will need to pay restitution in this case despite his limited financial means
- will have to comply with strict supervision conditions that bear the threat of incarceration and severely impede on his personal life

In addition, pleading guilty to any felony offense includes the loss of certain rights which include forfeiting the right to possess a firearm, to vote, to hold certain offices, to obtain certain licenses. In sum, the collateral consequences which Mr. Contreras will experience the rest of his life are serious and constitute just punishment, as well as both general and specific deterrence. No additional time in prison beyond the 42 month sentence requested by Mr. Contreras.

**E. Unwarranted sentencing disparities**

Section 3553(a)(6) requires a court to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." As this Court is aware, countless non-production child pornography defendants over the years have been sentenced to terms of imprisonment significantly lower than those suggested by the advisory Guidelines. In 2024, for example, over half of all sentences imposed under §2G2.2 resulted in a variance.[7] There has been a

[7] *2024 Sourcebook of Federal Sentencing Statistics*, UNITED STATES SENTENCING COMMISSION, Table 32 ("Sentence Imposed Relative to the Guideline Range by Primary Sentencing Guideline").

strong "judge-initiated trend" of varying below the advisory Guidelines for child pornography possession offenses. *United States v. R.V.*, 157 F. Supp. 3d 207, 262 (E.D.N.Y. 2016) (imposing a non-custodial sentence for a defendant with a Guidelines range of 78 to 97 months). In varying from the Guidelines, "district judges nationwide have spoken out against the harsh Guidelines sentences for child pornography offenders." *Id.* (listing myriad cases throughout the country between 2008 and 2012 in which district courts imposed substantial variances).[8]

In our judicial district as well as others, defendants have received significant variances in child pornography cases with relatively high guidelines, some of which involve facts similar or more egregious than that of Mr. Contreras's offense conduct. *See for example. United States v. B.T.,* CR 21-38 EMC (48-month sentence where defendant, who had a prior conviction for possession of child pornography in military court, communicated with and solicited sexually explicit images from numerous minor victims via a social media platform; advisory range of 97-121 months); *United States v. R.H.*, CR 22-181 SI (60-month sentence for defendant who directly corresponded with an 11-year-old girl over a two-year period and elicited sexually explicit images and videos from her; advisory range was disputed, but government argued 210-262 month range applied); *United States v. E.E.*, CR 24-620 HSG (60-month sentence for defendant who messaged with multiple minor victims in online chat rooms where minors sent the defendant images and videos of themselves engaged in

---

[8] Mr. Contreras's guidelines of 78-97 months are based on four specific offense characteristics which increase his offense level by 13 levels and yet apply to almost every child-pornography defendant, thus failing to meaningfully distinguish their relative culpability. PSR at ¶¶ 50, 52-54. Indeed, according to the Sentencing Commission's fiscal-year 2024 figures, the percentage of child pornography defendants who received the same four enhancements identified above are:

§ 2G2.2 (b)(6) Use of a computer: 97.3% of defendants
§ 2G2.2 (b)(7) Number of images: 95% of defendants[8]
§ 2G2.2(b)(2) Victim under the age of 12 years: 92.6% of defendants
§ 2G2.2 (b)(4) Sadistic/masochistic or infant/toddler abuse: 78.6% of defendants

*Use of Guidelines and Specific Offense Characteristics,* U.S. SENTENCING COMMISSION, at 98-99 (Fiscal Year 2024). Because these four specific offender characteristics, adding a combined total of 13 levels, apply to most child pornography cases, they fail to appropriately measure a defendant's culpability. In a thorough report published in 2021, the Sentencing Commission itself explained that §2G2.2's enhancements "have not kept pace with technological advancements." *Federal Sentencing of Child Pornography: Non-Production Offenses*, U.S. SENTENCING COMMISSION at 68 (Jun. 2021) Guideline § 2G2.2 "no longer effectively differentiates among offenders in terms of either the seriousness of offense or culpability of the offender." *Id*. at 69.

sexual conduct); *United States v. A.A.*, CR 21-249 YGR (70-month sentence for a defendant with two prior convictions for promotion/distribution of child pornography who screen-recorded live videos of minors engaged in sexually explicit conduct; advisory range of 121 to 151 months); *United States v. D.K.*, CR 21-370 JST (36-month sentence for defendant who possessed child pornography, was active in online communities where he shared images and links to child pornography; advisory range of 78 to 97 months). While no case is the same, they are brought under the same statute and many include similar facts. In order to avoid unwarranted disparities among similarly situated defendants, the Court should consider these cases, along with the many mitigating factors in Mr. Contreras's case and impose a 42- month custodial sentence with five years of supervised release to follow.

**F. Respect for the law, deterrence and just punishment**

A sentence of 42 months custody is a lengthy sentence. It would be the longest term in prison Mr. Contreras will have served to date, and would promote respect for the law, provide just punishment for the offense conduct, and sufficient deterrence. If one considers personal deterrence, Mr. Contreras does not need several more years in prison to punish him for the offense. In the end, rehabilitation is more likely to protect the public and deter future crimes than a retributive punishment and Mr. Contreras has already made significant strides with his rehabilitation. A sentence of 42 months is fair and appropriate.

## III. OBJECTIONS TO THE PSR

**The Guidelines in the Plea Agreement Should be applied by the Court**

The defense contests the facts used to apply the adjustments discussed in the PSR at ¶¶3, 51, 58, and 62. The defense does not admit any facts not admitted in the plea agreement. The Guidelines state: "[w]hen any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor." U.S.S.G.§ 6A1.3(a). The parties have only stipulated to limited facts in the plea agreement. The plea agreement does not stipulate that any distribution occurred. The defense objects to the use of any facts not stipulated in the plea agreement. The government has the burden of establishing facts by a preponderance of the evidence, to prove up the enhancements The government, being bound by the

plea agreement, will not be expected to put on evidence of adjustments beyond those agreed upon in the plea agreement. As a result, the guidelines that should be applied are those applied by the parties in the plea agreement and do not include §2G2.2(A)(3)(F).

## IV. THE GOVERNMENT HAS NOT CARRIED ITS BURDEN FOR RESTITUTION

The government bears the burden of establishing that the defendant's conduct proximately caused the victims' claimed losses and the amount of those losses for purposes of restitution. *United States v. Hoffman*, 2022 WL 4017890, at *2 (W.D. Wash. 2022); *see* 18 U.S.C. § 2259(b)(3) (requiring restitution order to be "issued and enforced in accordance with section 3664"); 18 U.S.C. § 3664(e) (requiring government to prove "the amount of the loss sustained by a victim as a result of the offense"); *Paroline v. United States*, 572 U.S. 434, 443 (2014) (interpreting identical language in pre-amendment version of statute as placing burden on the government). Given the lack of significant information needed for the Court to make an informed assessment, the district court in *Hoffman* set restitution at the $3,000 statutory minimum for each victim, as the defendant had requested. 2022 WL 4017890, at *3, 7. The government has not met its burden.

## V. CONCLUSION

For the reasons set out above, Mr. Contreras respectfully requests that the Court sentence him to 42 months in custody with five years of supervised release to follow while on supervised release.

Dated: August 21, 2026

Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

/S

JOYCE LEAVITT
Assistant Federal Public Defender